653 S.E.2d 120 (2007)
In the Interest of M.C., a child.
No. A07A0856.
Court of Appeals of Georgia.
October 10, 2007.
*121 Robert M. Bearden Jr., for Appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Elizabeth M. Williamson, Asst. Atty. Gen., W. Ashley Hawkins, Forsyth, for Appellee.
ADAMS, Judge.
The father of M.C. appeals following the termination of his parental rights.
1. The father first challenges the sufficiency of the evidence to support the termination order. On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the natural parents' rights to custody have been lost. In the Interest of S.H., 251 Ga.App. 555(1), 553 S.E.2d 849 (2001). "This court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met." (Citation omitted.) In the Interest of C.R.G., 272 Ga.App. 161, 161-162, 611 S.E.2d 784 (2005).
So viewed, the evidence shows the following: The Peach County Department of Family and Children Services first became involved with the family in January 2003 following a report that the mother was using drugs and neglecting the education of her older children. The mother was pregnant with M.C. at that time, but had not received any prenatal care and had missed scheduled drug screens.
*122 Both M.C. and the mother tested positive for drugs (marijuana) when M.C. was born on June 10, 2003, and a shelter care order was subsequently issued for M.C. and the mother's older children. The juvenile court subsequently entered an order finding the children to be deprived. At that time the court noted that M.C.'s father's whereabouts were unknown. This order was not appealed.
The Department subsequently submitted reunification case plans for the mother and conducted several review hearings in the ensuing months. It does not appear that the father attended these hearings but an order was entered in February 2004 finding that a home evaluation of the paternal grandmother's home, where the father was then living, had been disapproved after he became aggressive and refused to submit to a drug screen or to allow the grandmother to submit to a drug screen.
The father attended the October 7, 2004 review hearing during which the juvenile court adopted an updated case plan. This plan included goals for both the mother and the father, such as to complete drug treatment and remain drug free, maintain stable housing and employment, and maintain contact with the child. The juvenile court continued to hold hearings on the progress of the parents toward meeting their goals over the next several years.
It appears that the parents made some progress toward completing their case plan during this period. At the March 17, 2005 review hearing, which the father did not attend, it was noted that the father had completed a major portion of his case plan, but that M.C. could not be returned to her parents at that time because they had not completed a minimum of six months of clean drug screens.
Another hearing was held on June 16, 2005. The father was present for this hearing. At that time the juvenile court noted that the father had not completed any drug screens since March 2005 and had submitted possibly altered drug screens on other occasions. Following this hearing the juvenile court ordered the father to submit to a hair follicle test to detect the presence of drugs.[1]
The father had not submitted to the hair follicle test by the time the hearing resumed on July 7, 2005. Based on that failure, as well as the father's failure to complete a reunification plan and to pay child support the juvenile court entered an order for non-reunification for the father on July 18, 2005.[2]
The Department subsequently filed a petition to terminate the father's and the mother's parental rights. The father, in turn, filed a petition to legitimate M.C. The juvenile court conducted hearings on the termination petition on March 2, 2006 and May 18, 2006.
At the hearing the caseworker testified that the father had not visited M.C. since July 2005. The caseworker further testified that the father failed to submit to drug screens or submitted possibly altered samples, failed to undergo the hair follicle test as ordered by the juvenile court, failed to maintain housing or employment, and failed to pay child support or maintain a bond with M.C. The caseworker testified, however, that the father completed his parenting classes and that he attended counseling sessions until the money allowed by the Department to pay for them ran out. The caseworker also testified that although the father had been employed at his present job for six or seven months, he had failed to maintain employment over the past three years. And at the time of the hearing, the father was living in a motel.
The caseworker also testified that M.C. had bonded with her foster family, with whom she and her siblings had lived for the past 33 months, and that the family wanted to adopt M.C. and her siblings. The caseworker, after noting that the father had not legitimated M.C., recommended that both the father's and the mother's parental rights be terminated due to their failure to work to completion a case plan, go to drug treatment, properly submit drug screens, maintain stable *123 housing and employment, maintain a bond with M.C. and pay child support.
The father did not testify but submitted evidence from his physician that he was on prescription medication for restless leg syndrome and a back sprain, and that these drugs might be detected during a drug screen. However, the doctor further testified they would not cause the tests to show false positives for other drugs.
Following this hearing, the juvenile court entered an order terminating the parental rights of both the mother and the father. The father timely filed his notice of appeal on June 12, 2006.
Georgia law provides for a two-step process that must be followed in determining whether to terminate parental rights. OCGA § 15-11-94(a) requires that the trial court "first determine whether there is present clear and convincing evidence of parental misconduct or inability." Parental misconduct or inability is determined under the four criteria set forth in OCGA § 15-11-94(b)(4)(A)(i)-(iv). Those four factors are: (1) the child is deprived; (2) the lack of proper parental care or control by the parent whose rights are being terminated is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are shown to exist by clear and convincing evidence, then the court must also determine whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the child . . ., including the need for a secure and stable home." OCGA § 15-11-94(a). In the Interest of C.M., 275 Ga.App. 719, 621 S.E.2d 815 (2005).
Parental Misconduct or Inability. Based on the foregoing and other evidence of record, we find that there was clear and convincing evidence to support a finding by the juvenile court of parental misconduct or inability based on the statutory factors.
(a) Deprivation. Here, the orders finding M.C. deprived were not appealed, and the father is therefore bound by that finding for purposes of the termination proceedings. In the Interest of A.B., 283 Ga.App. 131, 136(1)(a), 640 S.E.2d 702 (2006).
(b) Lack of proper parental care and control as a cause. Likewise, "the failure to appeal the deprivation order renders the juvenile court's determination on this second factor binding as well." In the Interest of A.B., 283 Ga.App. at 136(1)(b), 640 S.E.2d 702, and cites.
(c) Deprivation Likely to Continue. Considering the sufficiency of the evidence to support the finding that the cause of deprivation is likely to continue, we observe that
[a]lthough it is well settled that a juvenile court may consider the past conduct of the parent in determining whether the conditions of deprivation are likely to continue, In the Interest of L.G., 273 Ga.App. 468, 474(2)(c), 615 S.E.2d 551 (2005), it is equally true that "evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of present unfitness is required." (Emphasis supplied.) In the Interest of A.M., 275 Ga. App. 630, 633, 621 S.E.2d 567 (2005). However, in considering past deprivations compared to present achievements, juvenile courts are entitled to assign "much less weight to such `assertions of sudden parental fitness' when compared to the other evidence." In the Interest of L.G., 273 Ga.App. at 474, 615 S.E.2d 551. And "what weight to give recent improvements is a question for the trier of fact. In considering a parent's claims of recent improvement, the trial court, not the appellate court determines whether a parents' conduct warrants hope of rehabilitation." (Punctuation and footnotes omitted.) In the Interest of A.T.H., 248 Ga.App. 570, 573(1), 547 S.E.2d 299 (2001).
In the Interest of D.D.B., 282 Ga.App. 416, 418-419(1), 638 S.E.2d 843 (2006).
The record in this case shows that M.C. had been in foster care since birth. The father continued to fail in his efforts to complete his reunification case plan, including but not limited to his failure to undergo regular valid drug screens and maintain stable *124 housing and employment. Moreover, the father's failure to provide support for M.C. or maintain a bond with her was sufficient to authorize the juvenile court to find that M.C.'s deprivation was likely to continue. "Georgia law requires a parent to financially support his or her child while the child is in foster care, even in the absence of a court order and even if unable to earn income. [Cits.]" In the Interest of A.R.A.S., 278 Ga. App. 608, 613(2)(c), 629 S.E.2d 822 (2006). Likewise, the father's failure to visit with M.C. over time showed he had failed to maintain a meaningful supportive parental bond with his child. See also In the Interest of F.C., 248 Ga.App. 675, 678(1), 549 S.E.2d 125 (2001) (mother's failure to comply with reunification plan supported juvenile court's finding that deprivation was likely to continue); In the Interest of D.L.D., 248 Ga.App. 149, 153, 546 S.E.2d 11 (2001) (court may consider history of drug abuse in finding deprivation likely to continue).
(d) Continued Deprivation Likely to Cause Serious Harm. As to this issue, the evidence here showed that M.C., who had been in foster care since birth and who had not visited with her father for approximately ten months preceding the termination hearings, had not bonded with her father; however, the evidence did show that she had bonded with her foster family. "We have previously held that where evidence shows no parental bond between parent and child, the child has adapted well to foster care, and the foster parents wish to adopt, this is sufficient to support the conclusion that continued deprivation is likely to harm the child. [Cits.]" In the Interest of A.R.A.S., 278 Ga. App. at 615, 629 S.E.2d 822. Moreover, the evidence further showed that the father could not demonstrate his ability to remain drug free, or to take the necessary steps to reunite with his child.
We have held that evidence of a [parent's] repeated failure to remain drug free and [the] failure to take the steps necessary to reunite with the children was sufficient to prove that the continued deprivation would cause the child serious physical, mental, emotional, or moral harm. Additionally, it is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems. . . . Therefore, we find that the evidence supports the juvenile court's finding that the continued deprivation is likely to cause [the child] serious harm.
(Punctuation and footnotes omitted.) In the Interest of J.S.T.S., 273 Ga.App. 221, 225-226, 614 S.E.2d 863 (2005).
2. "The same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest." (Punctuation and footnote omitted.) In the Interest of R.S., 270 Ga.App. 810, 812, 608 S.E.2d 286 (2004). After reviewing the record and transcripts, we conclude there was clear and convincing evidence to support the juvenile court's finding that termination of the father's parental rights was in the best interest of M.C., considering her "physical, mental, emotional, and moral condition and needs of the child . . ., including the need for a secure and stable home." OCGA § 15-11-94(a).
3. The father also argues that the Department failed to prove that it conducted a suitable search for a relative placement for the child or to prove that it was not in the child's best interest to be placed with a relative of the parents. The record shows that the juvenile court conducted a final disposition hearing to consider relative placements following the termination hearing. At this hearing, the Department presented evidence concerning their investigation into a possible placement with either the paternal or maternal grandmother. The father does not suggest in his brief on appeal that there were other placements that should have been considered by the court, and at the disposition hearing his attorney stated only that the father wanted the child to be placed with his mother but did not state that there were other placements that the court should have but failed to consider. And we note further that since the evidence shows the juvenile court did consider at least two possible relative placements, this case is thus unlike In the Interest of T.A.M., 280 Ga.App. 494, 499(4), 634 S.E.2d 456 (2006), relied on by the father, in which the Department conceded *125 that the record was devoid of any evidence that an effort had been made to find a suitable relative placement.
The father also contends that the evidence presented at the hearing as to the investigation of his mother as a possible placement was hearsay. At the hearing the caseworker testified that a home evaluation had been conducted by the Houston County Department of Family and Children Services on the father's mother and that although no written report of the evaluation was as yet available, the report indicated financial instability and the lack of a bond with M.C. Upon questioning by the juvenile court as to the basis for the conclusion that there was no bond between the child and the paternal grandmother, the caseworker responded that the paternal grandmother had not been visiting with the child. As we have previously noted,
"in all proceedings involving custody of a child, all information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the [matter]." OCGA § 15-11-56(a). "To the degree any such information contained hearsay, the courts are presumed to have disregarded it." In the Interest of O.J., 257 Ga.App. 1, 4(2), 570 S.E.2d 79 (2002).
In the Interest of T.A.M., 280 Ga.App. at 499(3), 634 S.E.2d 456. Moreover, in addition to the above, based on the evidence previously presented at the other hearings in this case, the juvenile court noted that the father's mother was not related to M.C.'s other siblings and that the three siblings were living together with their current foster parents who wished to adopt them. Thus, placement of M.C. with her paternal grandmother would result in the siblings no longer being together, while continued placement in the foster home would allow the siblings to remain together and be adopted by the foster parents. As the father acknowledges, the juvenile court determines whether placement with a relative is in the best interest of the child.
Inasmuch as there is no conclusive preference given to relatives [under OCGA § 15-11-103(a)(1)], the court retained a wide discretion to determine whether to keep the children [together] in their stable foster [home] or to place the [child] with a relative. Under the "any evidence" standard of review, we discern no abuse of that discretion here.
(Footnote omitted). In the Interest of R.G., 249 Ga.App. 91, 97(4), 547 S.E.2d 729 (2001).
4. Contrary to the father's final enumeration of error, the results of the drug screening tests conducted on samples of his urine were admissible at trial. The Department submitted more than adequate proof of the scientific validity and reliability of tests, which were neither novel nor new. Likewise, the Department submitted sufficient proof of the chain of custody of the tested samples to warrant their admission into evidence at the hearing as found by the juvenile court. This enumeration is thus also without merit.
Judgment affirmed.
ANDREWS, P.J., and ELLINGTON, J., concur.
NOTES
[1] The mother was also ordered to undergo this testing.
[2] A nonreunification plan was also entered at this time as to the mother.