A07A2425. IN THE INTEREST OF D. H. et al., children.

(658 SE2d 831)

SMITH, Presiding Judge.

The mother of six-year-old D. H., three-year-old E. H., and two-year-old J. H. appeals from a juvenile court's order terminating her parental rights.[1] She challenges the sufficiency of the evidence supporting the termination; she also claims that she received ineffective assistance of counsel and that the court erred in failing to give her adequate time to complete her case plan. For reasons that follow, we affirm.

1. The mother argues that the evidence presented by the Department of Family and Children Services ("DFACS") was insufficient to support termination of her parental rights.

> On appeal from a termination order, this [c]ourt views the evidence in the light most favorable to [DFACS] and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost. We do not weigh the evidence or determine the credibility of witnesses, but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.

---

[1] The fathers of these children are not parties to this appeal. The record shows that the identities and whereabouts of the fathers are unknown.

(Citation and footnote omitted.) *In the Interest of T. W. O.*, 283 Ga. App. 771 (643 SE2d 255) (2007).

So viewed, the evidence revealed the mother had been placed in DFACS care due to neglect in June 2000 when she was 13 years old. On September 30, 2001, while the mother was still in DFACS care, she gave birth to D. H. The child was subsequently placed in DFACS custody, and on November 7, 2001, the juvenile court found him to be deprived. The mother did not appeal this order. DFACS developed a reunification plan for the mother which required her to attend and complete parenting classes, cooperate with her placement resource, provide for D. H.'s daily care, wear a hearing aid on a consistent basis, and follow up with D. H.'s medical needs. In February 2002, DFACS filed a second deprivation petition, alleging that the mother was unable to provide for D. H.'s needs and supervision. On May 27, 2003, the juvenile court again found D. H. to be deprived. The mother also did not appeal this order. On May 4, 2004, in response to DFACS's motion to extend custody, the juvenile court found that D. H. continued to be deprived because the mother failed to remain in school and failed to remain in the DFACS placements. The court found further that the mother had been placed in the same home with D. H., but that she had "disrupted" the placement. The mother did not appeal this order.

In May 2004, at the age of 16, the mother gave birth to E. H. The juvenile court found that E. H. was also deprived and ordered that he be placed in DFACS custody. The mother did not appeal this order. DFACS developed a case plan regarding E. H., which required the mother to maintain a source of income, obtain childcare, complete parenting classes, obtain a high school diploma or fulfill the requirements for a GED, obtain and wear a hearing aid on a consistent basis, and remain in therapy.

On December 9, 2004, DFACS filed a petition to end reunification services, alleging that the mother had abandoned and neglected her children, that her whereabouts were unknown, and that she had "chosen to remove herself from a home provided for her and her children and instead live from place to place without her children." Six days later, the juvenile court conducted a review hearing and found that the mother failed to complete the goals provided in her case plan and was pregnant for a third time.

The mother gave birth to J. H. in April 2005. On May 9, 2005, DFACS filed a petition for deprivation regarding J. H., stating that the mother had been placed in the same foster home with D. H. and E. H. but that she had disrupted the placement and had to be separated from the children, and also noting that the mother had not parented any of the children on her own since they were born. The

juvenile court found J. H. to be deprived and ordered that she be placed in DFACS custody. The mother did not appeal this order.

In July 2005, the mother signed a case plan for reunification with regard to all three children. The case plan required, among other things, that the mother maintain a source of income to support the children, obtain and maintain stable housing, obtain childcare, successfully complete GED classes, wear a hearing aid as prescribed by a physician, obtain drug abuse assessment and submit to random drug screenings, and remain drug and alcohol free.

On January 25, 2006, DFACS filed a petition to terminate the mother's parental rights. The petition alleged that the mother failed to maintain stable housing and employment, failed to make any genuine efforts to regain custody of her children or be a parent to them, failed to cooperate with DFACS concerning her placement, and failed to complete the goals of any of her numerous case plans. The mother was 19 years old at the time of the hearing on the petition to terminate her parental rights.

At the hearing on the petition, several caseworkers involved with the case testified. The first caseworker testified that she had been assigned to the mother's case in June 2000, when the mother entered foster care, and remained assigned until June 2002. She testified further that in September 2001, the mother was placed in a private agency foster home with D. H., but that the mother argued with another woman in the home, and threatened to kill herself and D. H. As a result, the mother and D. H. were placed in a second home and remained there until June 2002. The caseworker explained that while in the home, the mother refused to attend school on a regular basis and was later suspended for fighting. The caseworker acknowledged, however, that the mother performed well in her parenting classes and parent support groups.

A second caseworker testified that she received the case in August 2004 and remained the mother's caseworker until November 2005. The caseworker testified that the mother's whereabouts were unknown when she received the case, but that beginning sometime before J. H. was born in April 2005, the mother kept in contact with her "for the most part" even though she often could not determine where the mother was living or with whom. The caseworker also testified that the mother failed to complete the goals of her case plan in that she failed to obtain stable housing, maintain employment, or obtain a GED. She noted that the mother was allowed weekly visits with the children until she received a report that the mother struck one of the children. The visits were then restricted to once per month.

A third caseworker testified that she was involved with the case from October 2005 to February 2006 and that she had observed the three children in the foster home. She stated that the children

interacted well with the foster parent. Evidence was also presented that the foster parent wished to adopt all three children.

The mother testified that, at the time of the hearing, she resided with her aunt and had done so "for maybe three months." Before living with her aunt, she lived with her sister-in-law for "nine or ten months," although she could not recall the address. She testified further that she had been employed for the last six months and received between $250 and $280 per week in salary. Before her current employment, she was employed at a grocery store part-time for three months. From November 2005 to February 2006 she was unemployed.

The mother admitted that she ran away after being placed in a home with D. H. on two different occasions, and that she did not provide any financial support to D. H. or E. H. (even though she also received money from family members). She did purchase clothing and diapers for them. The mother testified further that she did not complete high school or GED classes. She explained that she had only missed one visit with the children, and that she was ready to take custody of them, although she was unaware of their special needs — that E. H. had been diagnosed with asthma and D. H. required speech therapy.

Following the hearing, the trial court terminated the mother's parental rights finding, among other things, that the mother had a history of unstable living environments, failed to cooperate with DFACS in its efforts to reunite her with her children, failed to maintain stable employment, failed to participate in therapy, and failed to support her children financially. The mother now appeals from that order.

A juvenile court's termination of parental rights is a two-step process. The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home. OCGA § 15-11-94 (a).

(a) *Parental misconduct or inability.*

(i) *The children are deprived.* Because the mother did not appeal the juvenile court's many orders finding deprivation, she is bound by those findings. *In the Interest of C. R. G.*, 272 Ga. App. 161, 164 (611 SE2d 784) (2005).

(ii) *Lack of proper parental care or control is the cause of deprivation.* In making a determination on this second finding when the child is not in the parent's custody, the juvenile court may consider whether the parent failed, for a period of one year or longer before the filing of the petition for termination of parental rights, to: (1) develop and maintain a parental bond with the child in a meaningful, supportive manner, (2) provide care and support for the child as required by law or judicial decree, or (3) comply with a court-ordered reunification plan. OCGA § 15-11-94 (b) (4) (C).

Here, the evidence showed that although the mother made nearly all monthly or weekly visits with her children, there was little evidence, if any, that they bonded with her. She provided no support for them, even when she was living with her aunt rent-free and earning $250 to $280 per week. Moreover, the evidence showed that the mother failed to complete her many case plans, most of which required that she maintain stable housing and consistent income. Under these circumstances, the juvenile court did not err in finding by clear and convincing evidence that the children's lack of proper parental care and control was caused by the mother. See *In the Interest of M. C.*, 287 Ga. App. 766, 769 (1) (c) (653 SE2d 120) (2007).

(iii) *The cause of deprivation is likely to continue.* The evidence of the mother's failure to comply with her plans for reunification from 2001 to 2005, including her continued failure to support the children or maintain stable housing or employment, was sufficient to show that the mother had a history of being unable to care for the children, despite her desire to obtain custody of them. She has had nearly five years to

> complete a case plan in one iteration or another while the ultimate outcome for her [children] has remained in limbo. DFCS is not required to wait indefinitely for a parent to complete his or her case plan, and the children should not be forced to wait any longer for a permanent home.

(Citation and punctuation omitted.) *In the Interest of T. J.*, 281 Ga. App. 308, 312 (1) (636 SE2d 54) (2006). None of the children have ever been solely in the mother's care, and all have spent their lives in foster care, with the exception of D. H., who was placed in a home with the mother for only a brief time due to the mother's misconduct. At the time of the termination hearing, the mother was employed and living with an aunt, and clearly desired to take custody of her children. But

> [e]ven in light of some evidence that the [mother] had taken some steps toward reforming [her] life, such improvements are not conclusive of parental fitness in light of [her] prior

> history. The juvenile court was authorized to infer from the evidence of past conduct that the improvements in the [mother's] situation were not sufficient to justify maintaining the child in foster care limbo in hopes that the [mother] could achieve the needed parenting skills and provide an adequate home for [the children].

(Citations omitted.) *In the Interest of K. D.*, 285 Ga. App. 673, 684 (4) (647 SE2d 360) (2007). "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citations and punctuation omitted.) *In the Interest of J. A. S.*, 287 Ga. App. 125, 130 (1) (c) (650 SE2d 788) (2007).

In view of the foregoing, the evidence was sufficient for any rational trier of fact to find by clear and convincing evidence that the cause of the children's deprivation was likely to continue. See *In the Interest of M. C.*, supra, 287 Ga. App. at 769 (1) (c).

(iv) *Continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the children.* "[W]here evidence shows no parental bond between parent and child, the child has adapted well to foster care, and the foster parent[ ] wish[es] to adopt, this is sufficient to support the conclusion that continued deprivation is likely to harm the child." (Citations and punctuation omitted.) *In the Interest of M. C.*, supra, 287 Ga. App. at 769-770 (1) (d). In this case, the three children have been placed together in foster care and have a bond with the foster parent who wishes to adopt them. The mother is unaware of the children's special needs and has failed to obtain stable housing or provide support for the children. And a child and family assessment noted that the mother had "poor parenting skills, poor impulse control, and minimal or no bond with E. H." Under these circumstances, we cannot say that the trial court erred in finding that the continued deprivation would likely cause the children serious harm. See id.

(b) *The best interest of the child.* "The same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest." (Citation, punctuation and footnote omitted.) *In the Interest of M. C.*, supra, 287 Ga. App. at 770 (2). After reviewing the record here, we conclude clear and convincing evidence supports the juvenile court's finding that termination of the mother's parental rights was in the best interests of the children.

2. The mother contends that the trial court failed to give her adequate time to complete her case plan in violation of OCGA § 15-11-94 (b) (4) (C) (iii). OCGA § 15-11-94 (b) (4) (C) (iii) provides that

where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights . . . [t]o comply with a court ordered plan designed to reunite the child with the parent or parents.

The mother cites to no authority, and we have found none, limiting the court's consideration to the most recent case plan. While it is true that the mother's most recent case plan for reunification was signed on July 7, 2005, and the petition to terminate her parental rights was filed six months later on January 25, 2006, the mother had previously been directed to comply with a case plan in 2004 and was *first* directed to comply with a case plan in 2001. See *In the Interest of T. J.*, supra, 281 Ga. App. at 312 (1) (mother "has had over six years to complete a case plan in one iteration or another while the ultimate outcome for her minor daughters has remained in limbo"). The trial court therefore had authority to consider whether the mother had failed for *one year or longer prior to* the filing of the termination petition, to comply with *any* court-ordered case plan.

3. The mother contends that she received ineffective assistance of counsel. The mother did not, however, request a hearing on her motion for new trial, in which she alleged ineffective assistance generally. See *Wilkins v. State*, 220 Ga. App. 516, 518 (3) (469 SE2d 695) (1996).[2] And in the absence of trial counsel's testimony, it is extremely difficult to overcome the presumption that trial counsel was effective. *Dowels v. State*, 289 Ga. App. 369, 372 (2) (657 SE2d 279) (2008). Morever, the mother has failed to state a specific ground or grounds of ineffective assistance in her motion for new trial (nor did she file an amended motion to do so), which precludes our review of the claim on appeal. See, e.g., *Rogers v. State*, 247 Ga. App. 219, 231 (18) (a) (543 SE2d 81) (2000).

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED MARCH 5, 2008.

---

[2] We note that our citation to criminal authority is not inappropriate here as "parents facing termination of their rights have been afforded some of the protections to which criminal defendants are entitled[,]" including the right to effective representation. (Citations and punctuation omitted.) *In the Interest of A. H. P.*, 232 Ga. App. 330, 334 (2) (500 SE2d 418) (1998).

*LaQuisha Simmons-Malachi*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Elizabeth M. Williamson, Assistant Attorneys General*, for appellee.