662 S.E.2d 846 (2008)
In the Interest of B.A., a Child.
No. A08A0083.
Court of Appeals of Georgia.
June 4, 2008.
*847 Drummond & Swindle, Jason W. Swindle, Carrollton, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, T. Michael Flinn, for appellee.
RUFFIN, Presiding Judge.
The mother of B.A. appeals the termination of her parental rights, challenging the sufficiency of the evidence. She argues that the State failed to prove either parental unfitness or that termination of her parental rights would be in the child's best interest. Finding the evidence sufficient, we affirm.
On appeal from a termination of parental rights, we defer to the juvenile court's factfinding and do not weigh the evidence or determine the credibility of witnesses.[1] Our role is to determine whether "any rational trier of fact could have found by clear and convincing evidence that the natural parent['s] rights to custody have been lost."[2] Viewed in this manner, the record reflects that in October 2005, B.A., who was then three years old, and her brother, P.S., then eight years old, entered the custody of the Department of Family and Children Services ("DFCS") based on allegations of emotional abuse, lack of stable housing, domestic violence in the home, and drug use by the mother. A reunification case plan was entered; however, as of February 2006, a citizen review panel found that the mother had not taken any steps to comply with her case plan.
The DFCS case plan required the mother to: undergo a substance abuse assessment; attend and complete a drug and alcohol treatment program; submit to random drug screens; remain drug and alcohol free; attend and successfully complete parenting classes; have a source of income and sufficient housing; and obtain childcare services or otherwise ensure proper supervision of the children. In August 2006, a citizen review panel again found that the mother "ha[d] made no effort to work [her case] plan." On November 16, 2006, the juvenile court held a nonreunification hearing and granted DFCS's motion for nonreunification. The juvenile court found that the mother had made no progress on her case plan, was unemployed, had refused drug screens, had avoided receiving DFCS services, and had no electricity, water, or telephone in her home, which was in the foreclosure process. That order was not appealed.
DFCS moved to terminate the mother's parental rights, and the juvenile court held a termination hearing on April 18, 2007. Several counselors assigned to consult with the mother about parenting skills, substance abuse, and other aspects of her case plan testified that she had been uncooperative in scheduling meetings and in following the counselors' advice. They confirmed that the utilities at the mother's home were frequently turned off and that she relied on "boyfriends" to pay her bills.
The mother claimed that it was difficult for her to contact the counselors because of her work schedule, because her home was in foreclosure and had no electricity, because she had financial problems, and because she was battling bouts of depression. The mother stated that in December 2006, after the nonreunification case plan was approved, she "changed everything" and "started over for [her] kids." When asked why she had not done this earlier, she replied that she had been battling depression.
The mother testified that, at the time of the hearing, she was seeing a psychiatrist every six weeks for counseling for depression. She had begun parenting classes in February 2007, but had not completed them. The mother was pregnant and was not working because she had been placed on bed rest by her doctor. She was living in a new residence with her husband, who paid all her *848 living expenses.[3] She admitted that she had not gone for drug tests recently, although she had submitted to "a couple" of tests administered by DFCS. She also admitted that in the past she had prostituted herself to get money to pay bills. The mother had paid no child support for B.A.
B.A.'s current foster family wishes to adopt her. A psychologist who evaluated the child stated that she needed permanency in her life, and that without a structured environment and stable caregiver, B.A. was likely to revert to the defiant and sexualized behavior she exhibited upon entering foster care. The psychologist also testified that B.A. has "detached more and more" from her mother, whom she now refers to by her first name rather than "Mommy." Based on the evidence presented, the juvenile court terminated the mother's parental rights.
Before a parent's right to custody of her child may be terminated, the juvenile court must find by clear and convincing evidence both that the parent is unfit and that termination is in the child's best interest.[4] In order to establish parental unfitness, the juvenile court must find that "(1) the child is deprived, (2) the lack of parental care or control is the cause of the deprivation, (3) such lack of care or control is likely to continue, and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child."[5]
1. The mother asserts that the State did not prove parental unfitness by clear and convincing evidence. Specifically, she challenges the third element, arguing that "she has made significant strides in improving herself as a parent" and that "there is no compelling evidence that the past deprivation would continue."[6] In a termination of parental rights case, "`what weight to give recent improvements is a question for the trier of fact. In considering a parent's claims of recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation.'"[7]
Here, evidence that the mother failed to comply with her case plan supports the conclusion that B.A.'s deprivation would continue if returned to her mother.[8] The mother, by her own admission, did not even attempt to comply with her case plan for over a year. Only after the motion for nonreunification was granted did the mother begin to address some of the case plan's requirements. And the sole aspect of the case plan with which she arguably complied, having a source of income and sufficient housing, is wholly dependent on her husband, with whom she has an unstable history. "`The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.'"[9] Under these circumstances, the juvenile court was authorized to find that B.A.'s deprivation was likely to continue.[10]
2. The mother contends that the State did not prove by clear and convincing evidence that termination of her parental rights was in B.A.'s best interest. In making *849 its determination, the trial court could consider, among other evidence: the mother's continued failure to comply with her case plan;[11] B.A.'s need for a secure and stable home and the lack of a bond with her mother;[12] that B.A.'s foster family wishes to adopt her;[13] and that B.A.'s behavior has improved substantially in foster care.[14] Under these circumstances, the trial court did not err in finding that termination of the mother's parental rights was in the best interest of B.A.[15]
Judgment affirmed.
ANDREWS and BERNES, JJ., concur.
NOTES
[1] See In the Interest of K.S.W., 233 Ga.App. 144, 147(1), 503 S.E.2d 376 (1998).
[2] In the Interest of A.F., 283 Ga.App. 509, 510, 642 S.E.2d 148 (2007).
[3] The mother's husband is not B.A.'s father. The mother and her husband were married in November 2004, but he moved to Mexico in February 2005. The mother "[did not] think he was going to come back, so [she] started seeing somebody else." At the hearing, the mother testified that she and her husband "got back together a little less than a year ago" but that "it ended about mid . . . 2006." They then reconciled in the fall of 2006.
[4] See In the Interest of M.A., 280 Ga.App. 854, 856, 635 S.E.2d 223 (2006).
[5] (Punctuation omitted.) Id.
[6] The mother is bound by the juvenile court's earlier findings of deprivation, as none of the orders was appealed. See In the Interest of R.H.L., 272 Ga.App. 10, 12, 611 S.E.2d 700 (2005).
[7] In the Interest of M.N.R., 282 Ga.App. 46, 47, 637 S.E.2d 777 (2006).
[8] See In the Interest of J.A.S., 287 Ga.App. 125, 129(1)(c), 650 S.E.2d 788 (2007).
[9] Id. at 130, 650 S.E.2d 788.
[10] See In the Interest of A.H., 278 Ga.App. 192, 196(2), 628 S.E.2d 626 (2006); In the Interest of D.E., 269 Ga.App. 753, 755(1), 605 S.E.2d 394 (2004).
[11] See In the Interest of J.A., 286 Ga.App. 704, 708, 649 S.E.2d 882 (2007).
[12] See In the Interest of A.J., 288 Ga.App. 579, 582(2), 654 S.E.2d 465 (2007).
[13] See In the Interest of B.J.F., 276 Ga.App. 437, 443(2), 623 S.E.2d 547 (2005).
[14] See In the Interest of R.S., 287 Ga.App. 228, 232(1), 651 S.E.2d 156 (2007).
[15] See J.A., supra.; J.A.S., supra at 130(2), 650 S.E.2d 788.