664 S.E.2d 915 (2008)
In the Interest of B.S., a child.
No. A08A0228.
Court of Appeals of Georgia.
July 9, 2008.
*917 Flint & Connolly, John F. Connolly, Canton, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Jennifer L. Davis, for appellee.
ANDREWS, Judge.
The mother of B.S. appeals the juvenile court's termination of her parental rights, challenging the sufficiency of the evidence. The mother also alleges that the trial court erred in terminating her parental rights because the State failed to make reasonable efforts for a relative placement. After reviewing the record, we conclude there was no error and affirm.
In considering a challenge to the sufficiency of the evidence in a termination of parental rights case, the question is whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. In making that determination, this Court reviews the evidence in a light most favorable to the lower court's judgments and we neither weigh evidence nor determine the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.
In the Interest of R.S., 287 Ga.App. 228, 651 S.E.2d 156 (2007).
The criteria for terminating parental rights are well established:
First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination *918 of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.
In the Interest of B.T., 291 Ga.App. 604, 607, 662 S.E.2d 656 (2008).
The evidence at the termination hearing, taken in the light most favorable to the judgment, was that the Department of Family and Children Services began its investigation of the mother when it received a report in January 2001 that the mother was using drugs, had unstable housing, and that another child was not attending school. The Department received five additional referrals regarding the family from November 6, 2001 through October 14, 2003, for matters including drug use by the mother, infrequent school attendance by another child, and unstable housing. On October 14, 2003, the mother was arrested for possession of methamphetamine; and B.S., who was present at the time of the arrest and was 11 days shy of her first birthday, was taken into custody by the Department.
The mother's case plan required her to attend and complete a drug treatment program; submit to random drug screens; remain drug and alcohol free for six consecutive months; visit with B.S.; pay child support; obtain and maintain employment and housing; attend and complete parenting classes; and "work cooperatively with [her] attorney and the court system" to resolve her criminal case.
On October 30, 2003, the juvenile court entered an order finding B.S. to be deprived.
On December 31, 2004, nunc pro tunc to October 6, 2004, the juvenile court entered an order finding that the mother had failed to make sufficient progress toward completion of her case plan, B.S. continued to be deprived, and B.S. should continue in the Department's custody. The mother stipulated to the factual findings in the order. On December 15, 2004, the juvenile court entered another order, finding that B.S. remained deprived and should remain in the Department's custody and that a concurrent plan of reunification and nonreunification, "specifically, termination and adoption," was appropriate. The mother stipulated to the factual findings in this order as well. On March 2, 2005, the Department filed a petition to terminate the mother's parental rights to B.S.
At the hearing on the termination petition, the State's witnesses testified that the mother was referred to a facility for a drug assessment in December 2003. The mother attended a few sessions, but was discharged for noncompliance after she missed multiple appointments. She was then referred to a separate counseling facility, where she began attending therapy sessions in May 2004; however, her attendance was irregular. The facility ultimately recommended that the mother attend an intensive "Methamphetamine Program." In September 2004, the mother missed three drug screens scheduled by the department.
The mother was arrested again on January 6, 2005, for possession of methamphetamine. She remained in jail until June 11, 2005, when she went directly into an intensive residential drug treatment programthe "Women's Outreach Program"pursuant to court order.
At this facility, the mother attended therapy sessions, addiction education classes, parenting classes, and Narcotics Anonymous ("NA") or Alcoholics Anonymous ("AA") meetings, and successfully completed a nine-week work readiness program at a nearby technical school. She was discharged from the residential program and moved into an apartment shortly before the termination hearing.
According to her counselor, the mother attended treatment for five hours per day on an outpatient basis. Her counselor testified that the mother "had a lot of trouble" finding a job, probably due to "her legal charges," which remained unresolved.
Although the mother's father made a partial payment toward her child support obligation, the mother owed approximately $500 in child support at the time of the termination hearing.
According to the caseworker, B.S. "has bonded well" with her foster family, who *919 wished to adopt her. The foster mother testified that B.S. was initially "very clingy" and did not know her own name. At the time of the hearingapproximately nine months after her placement with the foster familyB.S.'s "tantrums [had] stopped. . . . She seems very calm and very happy, [and] very attached to her foster sister, who is twelve." According to the foster mother, she had no concerns about B.S.'s reaction after her visits with her mother beginning in June 2005, but said that the child was "clingy" after the two visits preceding the termination hearing.
The mother testified that she had used illegal drugs for 15 years. But, she stated that after her stay at the treatment facility, she understands her addiction and intends to work toward remaining drug-free and being able to take care of her child.
The guardian ad litem recommended termination, explaining that the mother's improvements occurred only after the Department filed the termination petition and the mother was arrested and required to attend a drug treatment program.
Following the hearing, the juvenile court issued an order terminating the mother's parental rights, noting that:
The mother, much to her credit, has made great progress in resolving some significant personal issues. But . . . the mother's history of substance abuse is lengthy. The period of sobriety is nominal in contrast, and has taken place under the controlled circumstances of incarceration . . . and inpatient treatment. . . . Moreover, her obtaining housing and employment are extremely recent developments, taking place during the course of the trial. Her felony methamphetamine indictment of 2005 is still pending, and presumably could result in her being incarcerated at any time she might relapse. Under those circumstances, despite [the mother's] laudable efforts, the Court infers that improvements in the mothers situation are not sufficient to justify maintaining the child[ ] in foster care limbo in hopes that the mother can achieve stability and provide an adequate home.[1]
This appeal followed.
1. The first two requirements for termination, that the child is deprived and that the lack of proper parental care is the cause of the deprivation, have already been established and are not at issue. As to the third requirement, there was sufficient clear and convincing evidence that the deprivation was likely to continue. As stated above, this Court is to view the evidence in the light most favorable to the trial court's judgment and when considering the issue of a parent's "recent improvement," it is "the [juvenile] court, not the appellate court, [that] determines whether a parent's conduct warrants hope of rehabilitation." In the Interest of L.S.D., 243 Ga.App. 626, 628, 534 S.E.2d 109 (2000).
"Evidence of past parental conduct resulting in deprivation may be considered in determining whether the deprivation is likely to continue and cause harm to the children. The juvenile court need not reunite the children with the parent to obtain current evidence of deprivation." In the Interest of L.S.D., supra at 627, 534 S.E.2d 109. And, "a few months of partial stability [do] not establish . . . that the [parent is] capable of maintaining the progress." (Punctuation omitted.) In the Interest of J.S., 232 Ga.App. 876, 880, 502 S.E.2d 788 (1998). "[I]mprovement that takes place only after the termination petition is filed is often unconvincing." In the Interest of L.S.D., supra at 628, 534 S.E.2d 109.
In this case, there is not even a few months of partial stability. The mother said she had rented an apartment and gotten a job, but both were accomplished during the termination hearing. The mother acknowledged that she would be working 32 to 40 hours a week, sometimes starting at 4:30 in the morning and going to substance abuse treatment four days a week from 5:30 to 9:00 at night. The mother also acknowledged that she had no day care at the time and no other place to leave B.S. while absent for these extended periods of time.
*920 The mother had been drug-free for eleven months at the time of the hearing, but she had been imprisoned for five months and in a court-ordered in-patient drug treatment program for six months. The mother had pending at the time of the termination hearing a second charge of possession of methamphetamine and, according to the mother, a pending charge of identity theft. As the juvenile court pointed out, she could be imprisoned at any time on those charges.
Further, the mother testified that she had two other children and she had seen them approximately three times in the last year and had never paid any support for them. See In the Interest of A.G., 287 Ga.App. 732, 652 S.E.2d 616 (2007) (in termination proceeding, fact that a mother has other children not in her care and not supported by her, bolsters the conclusion that she will be unable to support and care for another child).
Finally, and most importantly, the mother did not contend at the hearing or on appeal that she was presently able to care for the child and could not state a time when, if ever, she would be able to do so. This was sufficient clear and convincing evidence that the deprivation would continue.
There was also sufficient evidence that the continued deprivation would likely harm the child. As the juvenile court pointed out, "children who are left in foster care limbo suffer great emotional and mental harm due to the fact that they have no solid, permanent attachments." "[The child] should not be required to linger indefinitely in foster care." In the Interest of S.S.G.A., 285 Ga.App. 276, 279, 645 S.E.2d 724 (2007).
The legislature addressed this issue of "foster care limbo" by requiring the Department to file a petition for termination when the child, as here, has been in foster care "for 15 of the most recent 22 months." OCGA § 15-11-58(m). In In the Interest of D.H., 290 Ga.App. 66, 658 S.E.2d 831 (2008), we held that
even in light of some evidence that the mother had taken some steps toward reforming her life, such improvements are not conclusive of parental fitness in light of her prior history. The juvenile court was authorized to infer from the evidence of past conduct that the improvements in the mother's situation were not sufficient to justify maintaining the child in foster care limbo in hopes that the mother could achieve the needed parenting skills and provide an adequate home for the [child].
Id. at 70-71, 658 S.E.2d 831.
The juvenile court also could have found there was clear and convincing evidence that termination was in the best interest of the child, considering the child's physical, mental, emotional and moral condition and needs, including the need for a secure, stable home. OCGA § 15-11-94(a). In looking at whether termination is in the best interest of the child, the juvenile court can consider the child's need for a secure and stable home, the lack of a bond with her mother, that the child has improved substantially in foster care and the foster family's wish to adopt her. See In the Interest of B.A., 291 Ga.App. 762, 765(2), 662 S.E.2d 846 (2008).
Here, the juvenile court based this finding on the evidence that the child was in a good home and deserved the chance to have a stable home environment free of the fear of drug use and the possibility of continued incarceration of her mother.
The evidence at the hearing was that the child had found stability with her foster family. A caseworker testified that the child became very upset and "clingy" over the visits with the mother and had to be reassured that her foster mother was coming to pick her up.
The guardian ad litem, in recommending termination, stated that she observed the child and her foster mother and there was a bond between them. She also said that B.S. appeared frightened at being separated from her foster mother, and the foster family had bonded with B.S. and wanted to adopt her.
Accordingly, there was sufficient clear and convincing evidence that termination was in the child's best interest. See In the Interest of B.A., supra. See also In the Interest of J.S., supra (termination is in children's best interest because children are well cared for in foster home, have formed an emotional *921 bond, and there is no evidence that children will receive adequate care from appellant but rather that appellant is unprepared to care for them).
2. The mother also contends that the juvenile court erred in not considering placement of the child with a family member. The mother claims that neither the Department nor the trial court conducted a required "thorough search" for a family member with whom to place the child.
We find no merit in this enumeration. The current Code section regarding placement with relatives after a parent's rights are terminated provides:
If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child, if the court determines such placement is the most appropriate for and in the best interest of the child. A placement effected under this paragraph shall be conditioned upon the family member who is given permanent custody or who is granted an adoption of the child agreeing to abide by the terms and conditions of the order of the court.
OCGA § 15-11-103(a)(1). "Where some evidence exists showing compliance with the dictates of this provision, there is no basis for reversal." In the Interest of S.V., 281 Ga. App. 331, 332, 636 S.E.2d 80 (2006).
The mother points to Gina Daugherty and Robert Ensley as possible relative placements for the child. The record shows that Ms. Daugherty refused to be a long-term placement for the child, and Ensley had the child for a period of five months and then returned her to the Department's care because he and his wife "really couldn't do it anymore."
Accordingly, we find no abuse of the wide discretion afforded the juvenile court to determine whether the child should be placed with a relative or kept in a stable foster home. In the Interest of A.D.I., 291 Ga.App. 190, 196, 661 S.E.2d 606 (2008).
Judgment affirmed.
RUFFIN, P.J., and BERNES, J., concur.
NOTES
[1] (Citation and punctuation omitted.)