643 S.E.2d 370 (2007)
In the Interest of M.A.S. et al., children.
No. A06A2153.
Court of Appeals of Georgia.
March 9, 2007.
*371 Joseph S. Key, Sexton, Key & Hendrix, P.C., Stockbridge, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Jason S. Naunas, Assistant Attorney General, Atlanta, W. Ashley Hawkins, Forsyth, for appellee.
SMITH, Presiding Judge.
The mother of M.A.S. and N.K.S. appeals from the termination of her parental rights. She contends that the evidence was insufficient to support the juvenile court's termination order. We disagree and affirm.
"In considering a challenge to the sufficiency of the evidence in a termination of parental rights case, we review the evidence in the light most favorable to the judgment of the juvenile court and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost." (Citation omitted.) In the Interest of D.S., 247 Ga. App. 569, 569-570, 545 S.E.2d 1 (2001). So viewed, the evidence shows that the Monroe County Department of Family and Children Services (DFACS) took emergency custody of then three-year-old M.A.S. and five-year-old N.K.S. in June 2002 after their mother and father, who were traveling through Georgia from their home in Arkansas, were jailed in Monroe County with no money to be bonded out. Investigation by DFACS revealed that the mother had been under the influence of valium and was unable to care for herself or to supervise the two children. Following an adjudicatory and dispositional hearing, the juvenile court found the children to be deprived and adopted a reunification case plan in its July 2002 order.
Following a June 2003 hearing, the juvenile court concluded that the children continued to be deprived and ordered that temporary custody and control of the children remain with DFACS. The juvenile court found that the parents had moved to Macon to work on their case plan, stayed in Georgia only two months, and then had gone back to Arkansas, and that the mother had not contacted DFACS since October 2002. The juvenile court entered an order adopting a nonreunification plan for the mother. The juvenile court repeated its findings that the children were deprived in orders which became final in August 2004 and October 2005.
On October 31, 2005, the Department filed a petition for termination of the mother's parental rights.[1] At the January 12, 2006 termination hearing, a Department caseworker testified that the mother had not done anything on her reunification case plan, which required that she establish stable housing, complete drug treatment, be free of drugs for six months, and maintain employment. According to the caseworker, the mother had contacted her in November 2005 to ask for visitation with the children, but had otherwise not contacted the Department in the previous twelve to fourteen months, nor had she visited the children for two-and-a-half years. The mother never paid child support. The caseworker, who had monthly contact with the children, also testified that they were currently placed in a group home, were available for adoption, and were doing well in school.
The mother testified that she lived in Columbus, Georgia with her boyfriend and their ten-month-old child. She was not employed. She admitted that she had not paid child support or completed a drug rehabilitation program as required by her case plan, but maintained that she had been "clean" for two years, and that, "I have just gotten my life together." The mother admitted that her *372 previous drug problems included the use of crystal methamphetamine, pills, and "a little bit of everything."
When asked how long she lived in Arkansas after living in Macon for two months in 2002, she admitted that she could not recall because she had been on drugs. After living in Arkansas, she moved to Oklahoma for six months and then "went on the road" with her boyfriend until she moved into her current apartment in Columbus, where she had been for over a year. She challenged the caseworker's testimony that she had no contact with the children in over two-and-a-half years, contending that she visited M.A.S. and N.K.S. around Christmas of 2004 and that she sent them letters and cards. According to the mother, she asked to visit the children before Christmas of 2005, but was not allowed to do so.
The mother's boyfriend testified that he and the mother planned to marry, although evidence showed that the mother remained married to M.A.S.'s and N.K.S.'s father. According to the boyfriend, the mother no longer used drugs, and she was "perfect" as a parent for their child. A member of the mother's church testified that she was a great mother to the child in her custody. Another church member testified that the mother was off drugs.
1. A juvenile court's termination of parental rights is a two-step process. The court must first find parental misconduct or inability by clear and convincing evidence. Parental misconduct or inability exists where (1) the child is deprived, as such term is defined in OCGA § 15-11-2; (2) lack of proper parental care or control by the parent in question is the cause of the deprivation; (3) such cause of deprivation is likely to continue or will not likely be remedied; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. See OCGA § 15-11-94(b)(4)(A)(i)-(iv). "If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering [the child's] physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home." (Citation omitted.) In the Interest of A.C., 272 Ga.App. 165, 166, 611 S.E.2d 766 (2005).
(a) Applying the four factors set forth in OCGA § 15-11-94(b)(4)(A) to this case, we conclude that the evidence supported the juvenile court's finding of parental misconduct or inability.
(1) The children are deprived. As discussed above, the juvenile court found M.A.S. and N.K.S. to be deprived in at least four separate orders. "The mother did not appeal these orders and is thus bound by the deprivation determination." (Citation omitted.) In the Interest of A.B., 274 Ga.App. 230, 231, 617 S.E.2d 189 (2005).
(2) Lack of proper parental care or control is the cause of deprivation. Because the children are no longer in the mother's custody, the juvenile court was required to consider in determining whether the children were without proper parental care and control
whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i)[t]o develop and maintain a parental bond with the child[ren] in a meaningful, supportive manner; (ii)[t]o provide for the care and support of the child[ren] as required by law or judicial decree; and (iii)[t]o comply with a court ordered plan designed to reunite the child[ren] with the parent or parents.
OCGA § 15-11-94(b)(4)(C). Here, evidence supported the juvenile court's finding that all three factors applied in that, for a period of one year or longer before the termination petition was filed, the mother failed to support the children as required by law, failed to maintain a parental bond with the children, and failed to comply with her reunification case plans. The mother argues that it was not her fault that she did not see her children in the months before the termination hearing because she was denied visitation. However, she only visited the children once, in 2004, after she left Macon, Georgia and went to Arkansas in 2002, and it was only a few months before the termination hearing in January 2006 that she tried again to visit them. Accordingly, the mother cannot blame *373 DFACS for her failure to maintain a relationship with the children. The juvenile court did not err in finding by clear and convincing evidence that the children's lack of proper parental care and control was caused by the mother. See In the Interest of A.R.A.S., 278 Ga.App. 608, 612-614(2), 629 S.E.2d 822 (2006) (mother's failure to support her child, comply with reunification case plan, and to develop and maintain a parental bond supported juvenile court's determination that the child's deprived status was caused by mother's lack of proper parental care or control); In the Interest of D.J.F., 269 Ga.App. 783, 789-790, 605 S.E.2d 407 (2004) (father's failure to pay child support and maintain a parental bond supported finding that his lack of parental care caused the child's deprivation).
(3) The cause of the deprivation is likely to continue. The mother argues that the evidence did not show that she was presently unfit, especially considering evidence presented at the termination hearing that she was drug free, living in an apartment, and competently parenting her infant daughter. "Evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of present unfitness is required." (Citation and punctuation omitted; emphasis in original.) In the Interest of M.L.S., 273 Ga.App. 554, 557-558(1), 615 S.E.2d 615 (2005). Nevertheless, the juvenile court was entitled to consider the mother's past conduct in determining whether the deprivation of M.A.S. and N.K.S. was likely to continue. See In the Interest of A.M., 259 Ga.App. 537, 542, 578 S.E.2d 226 (2003). This conduct included, among other things, abandonment of the children and a history of drug abuse for which she has never received treatment. See In the Interest of M.L.S., supra, 273 Ga.App. at 557-558(1)(a)(3), 615 S.E.2d 615 (evidence that cause of deprivation was likely to continue included father's failure to show steps taken to control his alcohol problem); In the Interest of A.R.A.S., supra, 278 Ga.App. at 614(2), 629 S.E.2d 822 (where over course of their lifetime mother failed to establish a bond with her children, essentially abandoning them to their fate, juvenile court was entitled to conclude that cause of deprivation was likely to continue).
Further, the mother was given the opportunity to address the children's deprivation through her reunification case plan, but declined to do so. "Repeated failure to comply with case plan goals may show that the cause of the deprivation is likely to continue." In the Interest of A.K., 272 Ga.App. 429, 436(1)(c), 612 S.E.2d 581 (2005).
In view of the foregoing, the evidence was sufficient for any rational trier of fact to find by clear and convincing evidence that the cause of the children's deprivation was likely to continue.
(4) Continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the children. We have recently framed this issue as "whether, if the children were returned to the mother's care, would they likely suffer serious harm as a result thereof?" In the Interest of J.K., 278 Ga.App. 564, 568(2), 629 S.E.2d 529 (2006). The juvenile court found that the mother had failed to support M.A.S. and N.K.S., had abandoned these children, and had failed to comply with any part of her case plan, which included treatment for her drug problem. The mother's past conduct, including the complete disregard for her reunification plan goals, authorized the juvenile court to conclude that the "same pattern of deprivation would likely continue if the children were reunited with their mother." In the Interest of D.T., 251 Ga.App. 839, 846(3), 555 S.E.2d 215 (2001).
Here, that pattern of deprivation included the mother's willingness to sever ties with her children and exposure of the children to her drug abuse. While the mother claimed that she had changed, "[j]udging the credibility of the mother's good intentions was a task for the juvenile court." (Citation omitted.) In the Interest of J.V., 253 Ga.App. 798, 802, 560 S.E.2d 725 (2002).
We conclude that any rational trier of fact could have found by clear and convincing evidence that the continued deprivation of M.A.S. and N.K.S. would likely cause serious physical, mental, emotional or moral harm to the children. See In the Interest of J.K., *374 supra, 278 Ga.App. at 568(2), 629 S.E.2d 529 (facts supporting finding that continued deprivation would cause serious harm to the children included mother's failure to support her children, failure to develop a parental bond, failure to cooperate in her case plan, and medication dependency); In the Interest of J.S.T.S., 273 Ga.App. 221, 225-226, 614 S.E.2d 863 (2005) (facts supporting that continued deprivation would cause serious harm to the children included mother's failure to complete her reunification case plan and failure to maintain a bond with or support her children).
(b) Turning to the second prong of the termination analysis, we find that the juvenile court was authorized to conclude that the termination of the mother's rights was in the best interests of the children, considering the children's needs, including the need for a secure and stable home, and their physical, mental, emotional, and moral condition. See OCGA § 15-11-94(a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) In the Interest of C.L.R., 232 Ga. App. 134, 138(2), 501 S.E.2d 296 (1998). Further, "the juvenile court was authorized to infer from the evidence of past conduct that the improvements in the mother's situation were not sufficient to justify maintaining [M.A.S. and N.K.S.] in foster care limbo in hopes that the mother could achieve the needed parenting skills and provide an adequate home for [the children]." (Citation and punctuation omitted.) In the Interest of B.J.F., 276 Ga.App. 437, 442(1)(c), 623 S.E.2d 547 (2005).
Given the foregoing, there is sufficient evidence to support the juvenile court's decision to terminate the mother's parental rights.
2. The mother argues that the juvenile court improperly considered hearsay by finding that the children wished to be adopted and had never asked about their mother or father. She maintains that the only evidence supporting this finding was from the testimony of the caseworker based upon what she had been told by a member of the children's home staff. Even if the juvenile court did consider hearsay, however, this will not constitute reversible error if the other evidence introduced at the termination hearing, excluding the hearsay, supports the juvenile court's findings and conclusions. See In the Interest of T.A.M., 280 Ga.App. 494, 499(3), 634 S.E.2d 456 (2006). As demonstrated above, the other evidence supported the juvenile court's findings.
Judgment affirmed.
RUFFIN and PHIPPS, JJ., concur.
NOTES
[1] DFACS also petitioned to terminate the father's parental rights. Following the father's failure to appear at the termination hearing, the juvenile court granted the petition and terminated his parental rights.