A08A0050. IN THE INTEREST OF J. J. J., a child.

(657 SE2d 588)

PHIPPS, Judge.

The mother of J. J. J. appeals an order of the Juvenile Court of Glynn County terminating her parental rights. She challenges the sufficiency of the evidence to support each of the findings required for the decision. Finding no merit in her evidentiary challenge, we affirm.

OCGA § 15-11-94 (a) provides a two-step procedure for the termination of parental rights.

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the children's best interests, considering their physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.[1]

> The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.[2]

---

[1] *In the Interest of A. L. E.*, 248 Ga. App. 213, 216 (1) (546 SE2d 319) (2001) (footnotes omitted).

[2] *In the Interest of R. D. S. P.*, 230 Ga. App. 205 (495 SE2d 867) (1998) (citations and punctuation omitted).

A finding of unfitness must center on the parent alone, that is, can the parent provide for the child sufficiently so that the government is not forced to step in and separate the child from the parent. A court is not allowed to terminate a parent's natural right because it has determined that the child might have better financial, educational, or even moral advantages elsewhere. Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship.[3]

J. J. J. was born on November 2, 2005. Two days later, the Glynn County Department of Family and Children Services (DFCS) filed a petition claiming that J. J. J. was deprived. The petition alleged that appellant had seven other children who had been removed from her custody by the Charlton County Department of Family and Children Services due to medical and physical neglect and inadequate supervision, that the Juvenile Court of Charlton County had adopted a nonreunification plan as to those children because of appellant's failure to comply with the reunification plan in that case, that appellant was the victim of domestic violence perpetrated by J. J. J.'s father, and that J. J. J. was thus at risk of abuse and neglect if left in appellant's custody. J. J. J. was placed in the temporary custody of DFCS pursuant to shelter-care and 72-hour hearing orders entered later in November.

Following a hearing, the juvenile court entered an order adjudicating J. J. J. deprived because he was without proper parental care or control required by law or necessary for his health or morals. Additionally, the court continued temporary custody in DFCS and ordered DFCS to prepare a reunification case plan. The plan prepared by DFCS was adopted by the court. The plan required appellant to obtain and maintain a source of income to support the child and to submit proof of income, to obtain and maintain safe and stable housing, to attend counseling for domestic violence, to attend and successfully complete parenting classes, to submit to a psychological evaluation and follow all recommendations, to submit to random drug screens with the understanding that a no-show for testing would be considered a positive result, to visit and maintain a bond with the child, and to provide for the support of the child.

Appellant refused to submit to a psychological evaluation until September 2006 when the presiding judge personally instructed her to do so. The psychologist who performed the evaluation found appellant functioning intellectually in the extremely low average to

---

[3] *Clark v. Wade*, 273 Ga. 587, 591 (544 SE2d 99) (2001) (footnote omitted).

borderline ranges. The psychologist found that, emotionally, appellant exhibited "significant depressive symptomology," anxiety, and feelings of insecurity and inferiority; that she had problems with concentration, attention, and stress, and became easily upset; and that she appeared to be experiencing difficulty managing daily responsibilities with regard to housing, employment, and finances. The psychologist's diagnostic impressions included major depressive disorder, social phobia, borderline intellectual functioning, and dependent personality disorder. The psychologist recommended that appellant undergo therapy due to her emotional problems, history of alcohol use, and domestic abuse.

In March 2007, DFCS petitioned for termination of appellant's parental rights based on, among other things, her failure to comply with the reunification case plan. At the hearing in May 2007, evidence was introduced showing the following:

About six months before the hearing, appellant married. At the time of the hearing, she was living with her newlywed husband in an apartment obtained through the Glynn County Housing Authority. There was, however, no bedding in the apartment. Moreover, during the last several years, appellant had moved from one residence to another approximately 20 times. She had lived in hotels or motels from which she had been evicted. Before marrying, she had a succession of unstable relationships with men she had met either on the street or in bars. And her abusive relationship with the putative father of J. J. J. did not end until he was sent to prison after he was arrested twice for beating her.

During the period she was monitored by DFCS, she was for the most part unemployed, having held only one documented job and having produced only one pay stub. At the time of the hearing, she was applying for Social Security disability payments and, although she said that her husband was working, DFCS had not verified his employment. Appellant had been referred to domestic violence counseling but had not attended. She displayed erratic, threatening behavior and was prescribed antidepressant medication, which at times she did not take. After twice admitting herself to a hospital, she was referred to psychological counseling and therapy, but provided no documentation of attendance at the facility which provided her with antidepressant medications and refused to sign a release of information by that facility. Concerns about alcohol and drug abuse based on admissions by appellant prompted DFCS to require her to submit to monthly drug screens, but she had done so infrequently. In addition, she missed numerous visitation sessions with J. J. J., sessions that she attended went poorly because of his adverse reaction to her, and she failed to provide him with any monetary support or with any

presents on birthdays or holidays. After six referrals, appellant did complete parenting classes.

The Juvenile Court of Charlton County had terminated appellant's parental rights to her other children, none of whom she had parented for any significant period. The Charlton County DFCS case supervisor testified to appellant's medical neglect of three of her other children, one of whom had kidney problems so severe that renal failure could have resulted. J. J. J. had been placed in the custody of a relative, who wanted to adopt him. According to the DFCS case manager, the child had developed a very strong bond with this relative, and removal of him from his current environment would be detrimental to him.

Appellant, who was 31 years old at the time of the hearing below, testified that she was seeking Social Security disability benefits based on a learning disability. She had quit one job because of an emotional breakdown. She testified that her life had changed from six months earlier because she had married, had ended an abusive relationship, and would soon earn an income to support her child. She also promised to take her medication as prescribed and reported that she was considering enrolling in school. She acknowledged, however, that she was not likely to obtain custody of her child at that point because "a little more work need[ed] to be done."

We conclude that the unappealed deprivation order establishes that the child is deprived and that lack of proper parental care or control is the cause of the deprivation.[4]

Moreover, there was evidence that appellant has a medically verifiable deficiency of mental or emotional health of such duration as to render her currently unable to provide adequately for the physical, mental, emotional, or moral condition of the child;[5] and that she failed to actively pursue the avenues of medication, therapy, and counseling offered to her, thereby demonstrating an unwillingness to treat her mental or emotional problems.[6] Although it does not appear that appellant ever engaged in any egregious or intentional misconduct toward this child, parental unfitness caused unintentionally and tantamount to physical or mental incapacity to care for the child will justify termination of parental rights.[7]

Additional evidence showed that appellant, without justifiable cause, failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights to provide

---

[4] *In the Interest of A. G.*, 253 Ga. App. 88, 89 (1) (a), (b) (558 SE2d 62) (2001).

[5] E.g., *In the Interest of K. N.*, 272 Ga. App. 45, 53 (a) (2) (611 SE2d 713) (2005), citing OCGA § 15-11-94 (b) (4) (B) (i).

[6] See *In the Interest of K. N.*, supra at 53 (a) (3).

[7] *In the Interest of C. W. D.*, 232 Ga. App. 200, 204 (1) (501 SE2d 232) (1998).

court-ordered support for the child or to otherwise comply with the court-ordered reunification plan, with the result that she was unable to develop and maintain a parental bond with the child in a meaningful and supportive manner.[8] As a result, evidence of appellant's past conduct was properly considered in determining whether the child's deprivation was likely to continue,[9] and testimony given by her at the hearing below could be viewed as "positive promises which are contrary to negative past fact."[10]

There was also evidence that visits with appellant were disturbing to the child, that the child is well bonded with the relative with whom he has been placed, that this relative wants to adopt him, and that it would be detrimental to the child to be removed from his current environment.[11]

In its totality, this evidence authorized the court to find that the lack of proper parental care or control caused the child's deprivation, that the continued deprivation is likely to cause harm to the child, that the deprivation is likely to continue, and that termination of appellant's parental rights would be in the child's best interest.[12] "It is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems."[13]

> We have previously held that where evidence shows no parental bond between parent and child, the child has adapted well to foster care, and the foster parents wish to adopt, this is sufficient to support the conclusion that continued deprivation is likely to harm the child.[14]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED FEBRUARY 1, 2008.

*John P. Rivers*, for appellant.

---

[8] E.g., id. at 202; OCGA § 15-11-94 (b) (4) (C).

[9] E.g., *In the Interest of M. A. S.*, 284 Ga. App. 102, 105 (1) (643 SE2d 370) (2007).

[10] *In the Interest of R. N.*, 224 Ga. App. 202, 205 (2) (480 SE2d 243) (1997) (citation and punctuation omitted).

[11] See, e.g., *In the Interest of K. N.*, supra at 54 (b); compare *In the Interest of D. F.*, 251 Ga. App. 859, 862 (555 SE2d 225) (2001).

[12] See *In the Interest of E. J.*, 284 Ga. App. 814 (644 SE2d 906) (2007); *In the Interest of K. A. S.*, 279 Ga. App. 643, 650-652 (1) (c), (d), (2) (632 SE2d 433) (2006); *In the Interest of C. W. D.*, supra at 202-204; compare *In the Interest of K. M.*, 240 Ga. App. 677 (523 SE2d 640) (1999).

[13] *In the Interest of A. R. A. S.*, 278 Ga. App. 608, 615 (2) (d) (629 SE2d 822) (2006) (citation and punctuation omitted).

[14] Id. (citations omitted).

Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, James A. Chamberlin, Jr., for appellee.