A08A0203. IN THE INTEREST OF A. D. I. et al., children.

(661 SE2d 606)

ANDREWS, Judge.

Appellant, the biological father of A. D. I. and D. I., minor children, appeals from the order of the Juvenile Court of Douglas County terminating his parental rights to the children pursuant to OCGA § 15-11-94.[1] For the following reasons, we affirm.

Under OCGA § 15-11-94, the juvenile court must engage in a two-step process to determine whether the criteria for termination of parental rights has been established. In the first step, the court must determine pursuant to OCGA § 15-11-94 (a) "whether there is present clear and convincing evidence of parental misconduct or inability." Such parental misconduct or inability exists where pursuant to OCGA § 15-11-94 (b) (4) (A) the court finds clear and convincing evidence of the following four factors:

> (i) The child is a deprived child, as such term is defined in Code Section 15-11-2; (ii) The lack of proper parental care or control by the parent in question is the cause of the

---

[1] The Appellant was not married to the mother prior to or after the birth of the children and had not legitimated the children. The juvenile court applied the termination procedures set forth in OCGA § 15-11-94 after determining that the Appellant had not abandoned his opportunity interest in the children. See *In re Baby Girl Eason*, 257 Ga. 292 (358 SE2d 459) (1987). The juvenile court's termination of the mother's parental rights to the children is not challenged in this appeal.

child's status as deprived; (iii) Such cause of deprivation is likely to continue or will not likely be remedied; and (iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.

Where the court finds that parental misconduct or inability is established under the above four factors, then the court proceeds to the second step by determining under OCGA § 15-11-94 (a) "whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." On appeal from a juvenile court's decision to terminate parental rights under OCGA § 15-11-94, we review the evidence in the light most favorable to the court's decision and determine whether any rational trier of fact could have found by clear and convincing evidence that the parental rights should be terminated. *In the Interest of S. G.*, 271 Ga. App. 776, 778 (611 SE2d 86) (2005). Applying these standards, we conclude that the evidence was sufficient to support the juvenile court's decision to terminate Appellant's parental rights to the children.

A. D. I. was six years old and D. I. was less than a year old when the juvenile court entered an order in July 2005 placing them in shelter care in the temporary custody of the Douglas County Department of Family and Children Services (DFACS). The order was based on findings that the mother and the Appellant neglected D. I.'s medical condition, and that both children were left without proper care and supervision. The juvenile court subsequently adjudicated that the children were deprived in September 2005 based on findings that the children's medical and other needs were being neglected; that the home was unclean; that the Appellant was abusing alcohol; that the mother had serious mental health problems; that the Appellant and the mother were unable to maintain stable employment to provide for the children; and that the Appellant and the mother had failed to cooperate with DFACS to address these problems. The court also ordered compliance with the terms of a case plan prepared pursuant to OCGA § 15-11-58 to reunify the Appellant and the mother with the children. Under the plan, the Appellant was ordered to cooperate with a substance abuse assessment; submit to random drug and alcohol abuse screens; complete psychological testing; attend parenting classes; be present at medical appointments scheduled for the children; maintain and verify to the case manager stable full-time employment sufficient to meet the needs of the children; and maintain housing sufficient to meet the needs of the children.

At a judicial review conducted in January 2006, the juvenile court noted that, while in the temporary custody of DFACS, A. D. I. was undergoing treatment for serious medical problems that had gone untreated while he was in the custody of the Appellant and the mother. The court also found that the Appellant and the mother had made no progress on their reunification case plan, and that neither of them was present for the review. As to the Appellant, the court found that he had failed to refrain from the use of alcohol and that "on December 2, 2005, the screener indicates that his level was the highest [blood] alcohol content the assessor has ever seen." The court also found that the Appellant failed to complete substance abuse assessment; failed to submit to random screens; failed to complete a psychological evaluation; failed to enroll in parenting classes; and failed to provide proof of stable employment. At a judicial review conducted in April 2006, the juvenile court found that the Appellant and the mother had still made little progress on their reunification case plan. The court found that the Appellant had failed to complete a substance abuse assessment or follow recommendations; had completed less than half of the tests required for psychological evaluation; had failed to complete parenting classes; had failed to provide proof of full-time employment; and had failed to provide a budget. The court noted that, when the Appellant appeared at the courthouse in March 2006, he tested at a blood alcohol level of 0.17. In June 2006, the juvenile court entered an order finding that D. I. had been diagnosed with a genetic disorder and other serious medical problems. The court found that the Appellant and the mother had attended only two parenting classes; that the mother failed to enter into mental health treatment; that the Appellant and the mother had been evicted from their home; and that the Appellant had lost his employment and failed to provide proof that he submitted to substance abuse assessment. The court further found that the Appellant and the mother had made insufficient progress on the reunification case plan given the amount of time the children had been in DFACS custody, and that they had failed to cooperate with DFACS. In light of these findings, along with the serious medical needs of D. I., the court noted a change in the permanency plan from reunification to termination of parental rights.

In August 2006, DFACS filed a petition seeking termination of the parental rights of the Appellant and the mother, and a hearing on the petition commenced in January 2007. At the hearing, various DFACS case managers testified and confirmed that the children were placed in foster care in July 2005 because of medical neglect and lack of proper parental care, and that the Appellant and the mother had been uncooperative and made insufficient progress on the reunification case plan. Evidence showed that the Appellant and the mother

never provided proof that they had stable employment or had established a residence where they could care for the children. Case managers testified that the Appellant and the mother cancelled some appointments, refused to come to the door when case managers were present at other times, and did not attend medical appointments for the children. At the time of the hearing, DFACS workers had no information about where the Appellant and mother lived. Although there was evidence that, about a year after the children were placed in foster care, the Appellant finally participated in the required program for alcohol abuse, the evidence also showed that the Appellant failed to successfully complete the program because he continued to abuse alcohol during and after the program. A psychologist testified that, when the Appellant completed the forms for the required psychological evaluation, he "actively resist[ed] providing accurate information on any of the forms," and that the Appellant's lack of cooperation was "an extreme example of somebody who just is refusing to cooperate with the evaluation process." Although the Appellant was offered a chance to retake the evaluation, he refused. According to the psychologist, in three interviews the Appellant never acknowledged that he had any problem with alcohol abuse, stable employment, or housing, and that the Appellant was not able to communicate an accurate understanding of proper parenting. The psychologist testified that the Appellant had taken no responsibility for these problems, and that his prognosis for successful treatment on these issues was poor. The Appellant's mother testified that the children had been neglected by the Appellant and their mother since birth; that the Appellant drinks alcohol to excess; and that the Appellant and the mother have no place to live. She testified that school officials called her to come get A. D. I. from school on one occasion because the child was so dirty and smelled so bad that it disrupted class. During the Appellant's testimony, he admitted that he was still drinking alcohol; denied that he had a problem with alcohol; and claimed that, when he previously tested at a 0.17 blood alcohol level, this was caused by the mouthwash he was using at the time. The Appellant admitted that he had no residence. After considering the evidence, the juvenile court made the determinations required under the two-step termination process in OCGA § 15-11-94 and entered an order in May 2007 terminating the Appellant's parental rights to the children.

On this record, there is no merit to the Appellant's claim that there was a lack of clear and convincing evidence of the four factors set forth in OCGA § 15-11-94 (b) (4) (A).

As to the first factor set forth in OCGA § 15-11-94 (b) (4) (A) (i), there was evidence that the children were deprived under the definition set forth in OCGA § 15-11-2 (8) (A), which defines a

deprived child as one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." The record shows that, after the children were removed from the custody of the Appellant and their mother in July 2005, the juvenile court entered an order finding that the children were deprived under this definition. Because there was no appeal from this order, the Appellant was bound by the deprivation determination. *In the Interest of M. A. S.*, 284 Ga. App. 102, 104 (643 SE2d 370) (2007).

As to the second factor set forth in OCGA § 15-11-94 (b) (4) (A) (ii), there was ample evidence that, from the time the children were taken into custody by DFACS in July 2005 until the termination order was entered in May 2007, the deprivation was caused by lack of proper parental care and control by the Appellant and the mother. In determining whether the children were without proper parental care and control the juvenile court was required under OCGA § 15-11-94 (b) (4) (B) (ii) to consider any evidence of "[e]xcessive use of or history of chronic unrehabilitated abuse of intoxicating liquors . . . with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child." There was clear and convincing evidence that the Appellant suffered from chronic and unrehabilitated abuse of alcohol that rendered him incapable of obtaining stable employment and adequately providing for the physical, emotional, and other needs of the children. Contrary to the Appellant's contention, the juvenile court did not base its decision solely on evidence of past parental misconduct or inability. In addition, because the children were not in the custody of the parents who were the subject of the termination proceedings, in determining whether the children were without proper parental care and control, the court was required to consider pursuant to OCGA § 15-11-94 (b) (4) (C)

> whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) [t]o develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) [t]o provide for the care and support of the child as required by law or judicial decree; and (iii) [t]o comply with a court ordered plan designed to reunite the child with the parent or parents.

The Appellant contends that the juvenile court failed to consider whether he complied with these requirements. Although the termination order does not use the precise language of the statute to

consider these requirements, the order finds that the Appellant had developed a bond with A. D. I.; that the younger child, D. I., did not recognize the Appellant or the mother as parents; that the Appellant and the mother, who had no stable employment and no housing, were not capable of providing support for themselves or for the children; and that the Appellant and the mother failed to comply with the requirements of the court-ordered plan for reunification. The record shows that the juvenile court adequately considered the requirements of OCGA § 15-11-94 (b) (4) (C) in reaching its determination that the children were deprived because of lack of proper parental care and control by the Appellant and the mother. *In the Interest of A. M.*, 275 Ga. App. 630, 634 (621 SE2d 567) (2005).

As to the third factor set forth in OCGA § 15-11-94 (b) (4) (A) (iii), the record supports the juvenile court's finding that the cause of the children's deprivation is likely to continue. Evidence showed that, despite undergoing required treatment for alcohol abuse, the Appellant continued to abuse alcohol during and after the treatment; that he refused to recognize that he had a problem with alcohol abuse; and that his prognosis for successful treatment of this condition was poor. This evidence, along with evidence that the Appellant had a history of alcohol abuse, supported the court's determination that deprivation caused by lack of parental care and control is likely to continue. *In the Interest of A. K.*, 272 Ga. App. 429, 436 (612 SE2d 581) (2005); *In the Interest of M. A. S.*, 284 Ga. App. at 105.

As to the fourth factor set forth in OCGA § 15-11-94 (b) (4) (A) (iv), the record was sufficient to support the juvenile court's determination that continued deprivation was likely to cause the children serious physical, mental, emotional, or moral harm. At issue in the consideration of this factor is whether the children would suffer serious harm if they were returned to the Appellant's care and control and the continued deprivation associated with that environment. *In the Interest of J. K.*, 278 Ga. App. 564, 567 (629 SE2d 529) (2006). All of the evidence cited in support of the first three factors also supports the court's finding that continued deprivation in the Appellant's custody would seriously harm the children. *In the Interest of B. J. F.*, 276 Ga. App. 437, 442 (623 SE2d 547) (2005). There is no merit in the Appellant's contention that the juvenile court failed to address this factor.

Having found parental misconduct or inability based on clear and convincing evidence in the first step, the juvenile court proceeded to the second step of the termination process and concluded under OCGA § 15-11-94 (a) that termination of the Appellant's parental rights was in the best interests of the children, considering the physical, mental, emotional, and moral condition and needs of

the children and their need for a secure and stable home. OCGA § 15-11-94 (a); *In the Interest of H. E. M. O.*, 281 Ga. App. 281, 286 (636 SE2d 47) (2006). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) *In the Interest of M. A. S.*, 284 Ga. App. at 107.

Finally, the Appellant contends that, upon termination of all parental rights, the juvenile court erred by leaving the children in the custody of DFACS for adoption rather than attempting to place the children with a suitable relative in accordance with OCGA § 15-11-103 (a) (1). The Appellant waived appellate review of this issue by failing to raise it below. *In the Interest of M. C.*, 243 Ga. App. 707, 712 (534 SE2d 442) (2000); *In the Interest of R. G.*, 249 Ga. App. 91, 96 (547 SE2d 729) (2001). In any event, after hearing evidence that no relatives were willing or able to assume custody, the court determined that placement with a relative was not an option. OCGA § 15-11-103 (a) (1) provides for the juvenile court to attempt placement of the child with a relative found by the court to be qualified "if the court determines such placement is the most appropriate for and in the best interest of the child." We find no abuse of the wide discretion afforded the juvenile court to determine whether the children should be placed with a relative or kept in a stable foster home. *In the Interest of R. G.*, 249 Ga. App. at 97.

*Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED APRIL 16, 2008.

*Victoria E. Rowan*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Virginia B. Fuller, Assistant Attorney General, Andrea R. Moldovan*, for appellee.