684 S.E.2d 360 (2009)
300 Ga. App. 235
In the Interest of A.J.D.S. et al., children (two cases).
Nos. A09A1883, A09A1884.
Court of Appeals of Georgia.
September 25, 2009.
*361 Earle W. Angell, Toccoa, for appellant (case no. A09A1883).
Willie J. Woodruff, Jr., Toccoa, for appellant (case no. A09A1884).
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Elizabeth M. Williamson, Asst. Atty. Gen., Marie K. Evans, Toccoa, for appellee.
JOHNSON, Presiding Judge.
Following a hearing, the juvenile court terminated the parental rights of the natural mother and father of six-year-old A.J.D.S. and four-year-old J.L.T.S. Both the mother and father appeal, challenging the sufficiency of the evidence supporting the termination. For reasons that follow, we affirm in both cases.
In reviewing an order terminating parental rights, we construe the evidence in the light most favorable to the juvenile court's ruling and defer to that court's factual findings.[1] We do not weigh the evidence or resolve issues of witness credibility, but merely "determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody should be terminated."[2]
So viewed, the evidence shows that on January 30, 2005, the Stephens County Department of Family and Children Services obtained a shelter care order for the children, then ages three and one, after the mother was arrested for possession of methamphetamine and while the father was incarcerated in another state. The juvenile court subsequently found that the children were deprived based on the mother's drug abuse and the father's failure to provide custody, control, or support for them. Neither the mother nor the father appealed that ruling.
The juvenile court issued a reunification case plan for the mother requiring her to, among other things, submit to random drug screens and obtain and maintain stable housing and employment. After hearings held in January 2006, January 2007, and September 2007, the juvenile court concluded that the mother had failed to make sufficient progress on her case plan, based on, among other things, her positive drug screens and/or avoidance of drug screens, and her failure to obtain and maintain housing and employment.
After the father legitimated the children and was released from prison in March 2006, the juvenile court issued a reunification plan requiring him to, among other things, remain alcohol and drug free for six consecutive months. In June 2006, the mother gave *362 birth to another child, and the father was arrested for assault and cruelty to children in October 2006.
In December 2007, the Department petitioned to terminate the parental rights of the mother and father. At hearings conducted before the juvenile court, evidence was presented that the mother had satisfied some case plan goals, but she failed to complete others. For example, while she had not tested positive for drug use in more than six months, she had recently refused to be tested on several occasions. The mother had also failed to maintain any job for more than a few months, obtain stable housing during the period that the children were in foster care, or consistently pay child support. Evidence was presented that the father had failed to develop a significant relationship with the children or consistently pay child support, and that during the brief period that the father was not incarcerated, he failed to follow through with his promises to stop drinking. Based on this and other evidence, the juvenile court terminated the mother's and father's parental rights to A.J.D.S. and J.L.T.S. We find no error.
Before terminating parental rights, the juvenile court conducts a two-step analysis. It must first find parental misconduct or inability, which requires clear and convincing evidence that (1) the child is deprived; (2) a lack of proper parental care or control caused the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation will likely cause serious physical, mental, emotional, or moral harm to the child.[3] If these factors exist, the juvenile court must then determine "whether termination of parental rights is in the best interest of the child[ren], considering [their] physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home."[4]
1. Deprivation. The juvenile court found the children deprived in January 2005 and reaffirmed that finding in subsequent orders. Neither the mother nor the father appealed these orders. Accordingly, the parents are bound by the findings of deprivation for purposes of the termination proceedings.[5]
2. Lack of proper parental care or control. Only the mother appeals the juvenile court's finding that there was clear and convincing evidence that the lack of her proper parental care or control was the cause of the deprivation. In making a determination on this finding when the children are not in the parent's custody, the juvenile court may consider whether the parent failed, for a period of one year or longer before the filing of the petition for termination of parental rights, to (1) develop and maintain a parental bond with the child in a meaningful, supportive manner, (2) provide care and support for the child as required by law or judicial decree, or (3) comply with a court-ordered reunification plan.[6]
Here, clear and convincing evidence was presented that, during the year prior to the filing of the petition for termination of parental rights, the mother failed to fully comply with her reunification case plans, which required that she maintain stable housing and employment and submit to court-ordered drug screenings. Under these circumstances, the juvenile court did not err in finding that clear and convincing evidence established that the lack of proper parental care and control by the mother caused the children to be deprived.[7]
3. Continued deprivation. Clear and convincing evidence also demonstrates a likelihood of continuing deprivation. In evaluating this factor, the juvenile court was authorized to consider the past conduct of the mother and father in determining whether conditions of deprivation would be likely to continue if the children were returned to the parent.[8]
*363 Here, for example, a drug screener testified that the mother was uncooperative, avoided him, and on several occasions refused his requests to obtain the court-ordered drug screens. During the six months prior to the termination hearing, the screener, who had been contracted to perform drug screens twice per month, attempted to obtain a drug screen from the mother on at least thirteen occasions and was successful only once. While the mother claims to have been rehabilitated from her drug problem, the decision as to the future of her children "must rest on more than positive promises which are contrary to negative past fact."[9] The mother's repeated refusal to submit to drug screens "showed disregard for her reunification case plan" and, along with her failure to consistently pay child support or to obtain and maintain stable housing and employment, all demonstrated that the children would likely continue to be deprived if they were returned to her.[10]
While evidence indicated that the father of A.J.D.S. and J.L.T.S. made some progress on his reunification case plan, legitimated the children, and showed more interaction with the children during visits than did the mother, evidence was also presented that during the three years that passed between the shelter care order and the hearing on the petition to terminate his parental rights, the father was incarcerated for all but six months. In addition, after attending the first class of a program designed to help him with his drinking and "severe anger problems," the father was drinking again within a week and was terminated from the program. While a parent's incarceration, in the absence of aggravating factors, does not automatically compel the termination of parental rights,[11] evidence of the father's continued alcohol abuse during the brief period he was not incarcerated supported the juvenile court's finding that the conditions of deprivation were likely to continue.[12]
4. Harm to the children. Only the mother appeals the trial court's finding that continued deprivation is likely to cause serious harm to the children. "It is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems."[13] At the time of the deprivation hearing, the children had been in foster care for three years, and evidence was presented that the foster parents provided the children with the security and stability that the mother did not. For example, the foster parents had remained in the same home during the three years that the children had lived with them. This evidence was sufficient to support the trial court's conclusion that the children's continued deprivation was likely to cause them serious harm.[14]
Given that clear and convincing evidence supported each of the factors showing parental misconduct or inability, and given that the mother and father do not challenge the trial court's conclusion that termination of their parental rights was in the best interests of the children, we discern no error.
Judgment affirmed in both cases.
ELLINGTON and MIKELL, JJ., concur.
NOTES
[1] In the Interest of B.W., 287 Ga.App. 54, 62, 651 S.E.2d 332 (2007).
[2] (Footnote omitted.) Id.
[3] See id.
[4] (Footnote omitted.) Id.
[5] In the Interest of D.B.C., 292 Ga.App. 487, 494(1)(a), 664 S.E.2d 848 (2008).
[6] OCGA § 15-11-94(b)(4)(C).
[7] In the Interest of D.H., 290 Ga.App. 66, 70(1)(a)(ii), 658 S.E.2d 831 (2008).
[8] In the Interest of J.S., 292 Ga.App. 86, 89, 663 S.E.2d 793 (2008).
[9] (Citation and punctuation omitted.) In the Interest of R.N., 224 Ga.App. 202, 205(2), 480 S.E.2d 243 (1997).
[10] See In the Interest of J.J., 299 Ga.App. 271, 276(2)(b), 682 S.E.2d 349 (2009).
[11] In the Interest of B.F., 253 Ga.App. 887, 891, 560 S.E.2d 738 (2002).
[12] In the Interest of J.L.C., 292 Ga.App. 763, 666 S.E.2d 98 (2008).
[13] (Citation and punctuation omitted.) In the Interest of J.J.J., 289 Ga.App. 466, 470, 657 S.E.2d 588 (2008).
[14] In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003).