A09A2003. IN THE INTEREST OF D. M. K., a child.
(690 SE2d 481)

DOYLE, Judge.
The mother of D. M. K. appeals the order terminating her parental rights, arguing that the juvenile court erred in determining that there was clear and convincing evidence (1) that the cause of D. M. K.'s deprivation was likely to continue, and (2) that continued deprivation of D. M. K. was likely to cause serious physical, emotional, mental, or moral harm. We affirm for the reasons that follow.

The juvenile court conducts a two-prong analysis for determining whether parental rights should be terminated. First, the juvenile court determines "whether there is clear and convincing evidence of parental misconduct or inability as provided in [OCGA § 15-11-94 (b)]. If such is shown, then the court considers whether termination of parental rights is in the best interest of the child."[1]

A finding of parental misconduct or inability requires clear and convincing evidence of the following four factors: 1)

---

[1] (Punctuation omitted.) *In the Interest of T. C.*, 282 Ga. App. 659 (639 SE2d 601) (2006).

that the child is deprived; 2) that the cause of the deprivation is a lack of proper parental care or control; 3) that the cause of the deprivation is likely to continue or will not likely be remedied; and 4) that the continued deprivation is likely to cause physical, mental, emotional, or moral harm to the child.[2]

In reviewing a termination case on appeal,

> we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.[3]

So viewed, the record shows that on November 16, 2005, the Tift County Department of Family and Children Services ("DFCS") filed a petition in the juvenile court regarding five-year-old D. M. K. and his seven-year-old sister, V. K., alleging that the mother's boyfriend, Delvin English, whipped D. M. K. with a belt on November 8, 2005, and that the mother kept D. M. K. home from school for three days so that the resulting wounds could heal. The emergency intake order entered by the juvenile court on the same day stated that D. M. K. had "severe bruises, welts[,] and open abrasions on his back and side as a result of the punishment administered by [English]" that were "still very obvious and unhealed" on November 15. The order also indicated that the mother had previously lost custody of her two older children "due to continuing domestic violence and abuse to her children by her paramours."

DFCS filed a petition for temporary custody of both D. M. K. and V. K. on November 20, 2005, and the juvenile court appointed a special advocate ("CASA") to represent the children. In her December 2005 report to the court, the CASA recommended both a non-reunification plan and a concurrent reunification plan "due to the mother's history," and she recommended that the mother have only supervised visitation with the children. The CASA filed another report with the juvenile court in January 2006, noting therein that both the mother and English had contacted DFCS and requested

---

[2] (Punctuation omitted.) *In the Interest of A. M.*, 259 Ga. App. 537, 541 (578 SE2d 226) (2003).

[3] (Punctuation omitted.) *In the Interest of T. C.*, 282 Ga. App. at 660.

that English be added to the mother's case plan because they planned to marry. The report also noted that the mother had gone to the home of the children's foster mother to see the children without first clearing the visit with DFCS, in violation of her case plan.

In April 2006, the juvenile court entered a supplemental order incorporating a reunification case plan for the mother which required her to, inter alia: complete a psychological evaluation and counseling sessions, successfully complete parenting classes, provide DFCS with monthly verification of a source of income for six consecutive months, and maintain stable housing for six months. In June 2006, the juvenile court entered an order finding both children to be deprived.[4] Thereafter, in June 2007, the Department filed a request for implementation of a non-reunification case plan, indicating that the mother had failed to comply with her case plan.

On June 8, 2007, DFCS filed a petition to terminate the mother's parental rights to D. M. K.[5] At the final hearing, the CASA testified that D. M. K. had been placed with two foster families, but that the child was ultimately transferred to the Georgia Sheriff's Boys Ranch in Hahira after he exhibited behavioral problems at the foster homes. The CASA's recommendation was termination of the mother's parental rights based on her failure to complete her case plan and her history of allowing her boyfriends to physically abuse her children.

Abigail Howard, one of D. M. K.'s foster mothers (who was the mother's aunt), testified at the termination hearing, stating that D. M. K. lived with her for approximately four months, during which time he exhibited disruptive and physically violent behavior. The child's behavior worsened after visits with his mother, and it was particularly bad when the mother would fail to appear after promised visits. According to Howard, although she would have allowed the mother to visit with D. M. K. whenever she wanted to, the mother only came to her home to visit the child four times; the mother did, however, make more frequent phone calls to D. M. K.

Chris Ray, an employee of Family Support Services who provided parenting classes to the mother, testified that the mother only attended approximately one-third of the scheduled classes and that she failed to complete the parenting course. According to Ray, the mother did attend most of her scheduled visits with D. M. K. Shawn Eilders, a therapist at the Boy's Ranch, testified that the mother appeared for three or four scheduled therapy sessions and that she failed to appear for another three or four. According to

---

[4] The mother did not appeal the deprivation order.

[5] In February 2007, the juvenile court granted permanent custody of V. K. to her father.

Eilders, D. M. K. has "a lot of behavioral issues" and requires a great deal of "special care" and supervision. The child, who has frequent fits where he screams, yells, cries, and pounds his fists, attends a special program at school where the staff is trained to use restraints on him if necessary. Although D. M. K. has made some progress at the ranch, in Eilders's opinion, the child will need "a very structured, very predictable environment for quite a long time" and he will "need to have people that are trained in . . . working with children with behavioral issues like he has, which are very common in children that have been abused the way he's been abused." Eilders testified that he would "find it unlikely" that the mother would be able to provide the environment that D. M. K. will require in the future.

At the termination hearing, the mother testified that her oldest son, C. K., was removed from her custody after her boyfriend burned him with a cigarette. According to the mother, she voluntarily relinquished custody of her oldest daughter, C. K., to the child's grandmother. The mother admitted that she canceled three or four appointments with Eilders and that although she provided some check stubs to DFCS, she failed to provide proof of income to DFCS as required by the case plan. She also admitted that she missed visits with D. M. K. while he lived with Howard, despite promising him that she would come to visit. The mother further testified that she lived with her grandfather for seven months before moving to her own place on April 1, 2007, approximately five months before the termination hearing. At the time of the hearing, the mother was working at a Hampton Inn. She also worked at Microtel, Waffle House, Holiday Inn, and Ole Times between 2004 and the hearing.

The court-appointed guardian ad litem also testified at the termination hearing, and she recommended that the mother's parental rights to D. M. K. be terminated based on her repeated failures to comply with and complete the case plan, her missed visits with her son, and her history of allowing her boyfriends to abuse her children. The guardian ad litem also testified that she did not believe that the mother would be capable of providing D. M. K. with the specialized parenting that he will require because of his behavioral problems.

Following the hearing, the juvenile court entered a final order terminating the mother's rights to D. M. K. In the order, the court noted that D. M. K. was found to be deprived as a result of the severe physical abuse by English, the mother's failure to protect him from such abuse, and the mother's attempts to conceal the abuse. The court also stated that the mother: continued her relationship with English; failed to comply with her case plan; was inconsistent with her visits with D. M. K.; failed to complete parenting classes; and

YALE LAW LIBRARY

failed to demonstrate an ability to care for D. M. K.'s specific behavioral issues. Thus, the trial court concluded that D. M. K.'s continued deprivation was caused by the mother and was likely to cause serious physical, moral, emotional, or mental harm to the child.

1. The mother contends that the evidence was insufficient to support the trial court's determination that the cause of D. M. K.'s deprivation was likely to continue. We disagree.

In determining whether a child's deprivation is likely to continue, the juvenile court is authorized to consider the past conduct of the parent.[6] Here, there was evidence that the mother missed approximately two-thirds of her scheduled parenting classes and approximately half of her scheduled therapy sessions. She also failed to provide DFCS with the requisite proof of income, and she missed multiple scheduled visitations with D. M. K. Moreover, the mother has demonstrated a pattern of permitting her children to be abused by her boyfriends. And in this case, she attempted to hide English's abuse of D. M. K. Although the mother claims to have separated from English and to have maintained a steady job and stable housing, "the decision as to the future of her [child] must rest on more than positive promises which are contrary to negative past fact."[7] Further, "judging the credibility of [the mother's] good intentions was a task for the juvenile court."[8] Given the mother's failure to comply with her reunification case plan and her history with D. M. K. and her other children, none of whom remained in her custody, the trial court was authorized to conclude that D. M. K. would likely continue to be deprived if he was returned to her.[9]

2. The mother also argues that there was insufficient evidence to support the trial court's conclusion that the deprivation was likely to cause physical, mental, emotional, or moral harm to D. M. K. Again, we disagree.

Here, "[i]n addition to the evidence of the mother's failure to protect her children in the past, there was also evidence that current contact with the mother was upsetting and disruptive to [D. M. K.]," and that the child's behavior worsened particularly after she failed to keep promises that she would visit him in his foster home.[10] There was testimony from a therapist at the Boys' Ranch, who had also provided therapy to the mother, that it was unlikely that the mother

---

[6] See *In the Interest of A. J. D. S.*, 300 Ga. App. 235, 238 (3) (684 SE2d 360) (2009).

[7] (Punctuation omitted.) Id.

[8] (Punctuation omitted.) *In the Interest of J. J.*, 299 Ga. App. 271, 277 (2) (682 SE2d 349) (2009).

[9] See *In the Interest of A. J. D. S.*, 300 Ga. App. at 238 (3); *In the Interest of J. J.*, 299 Ga. App. at 277 (2); *In the Interest of A. M.*, 259 Ga. App. at 542.

[10] Id. at 542.

would be able to provide the specific structured environment that D. M. K. would require given his significant behavioral issues. The therapist also testified that D. M. K. had made improvements while at the ranch. Under these circumstances, the evidence was sufficient to support the juvenile court's conclusion that the continued deprivation was likely to harm D. M. K.[11]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

## DECIDED JANUARY 29, 2010.

*Jason K. Hoffman,* for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Render M. Heard, Jr.,* for appellee.

---

[11] See *In the Interest of A. G.,* 293 Ga. App. 383, 388 (4) (667 SE2d 176) (2008); *In the Interest of J. K.,* 278 Ga. App. 564, 568 (2) (629 SE2d 529) (2006); *In the Interest of A. M.,* 259 Ga. App. at 542-543.