**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 27, 2020**

# In the Court of Appeals of Georgia

A20A0851. IN THE INTEREST OF L. B., a child.

MCFADDEN, Chief Judge.

This appeal arises from a juvenile court order terminating parental rights and challenges the sufficiency of the evidence supporting the court's finding that the child's dependency was likely to continue. Because there was sufficient evidence to support the finding, we affirm.

1. *Facts and procedural posture.*

On appeal from a juvenile court's decision to terminate parental rights, we review the evidence in the light most favorable to the court's decision and determine whether any rational trier of fact could have found by clear and convincing evidence that the parental rights should be terminated. In doing so, we do not weigh the evidence or resolve credibility issues, but merely determine whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated.

*In the Interest of C. S.*, 354 Ga. App. 133, 136 (840 SE2d 475) (2020) (citations and punctuation omitted).

So viewed, the record shows that in August 2014, the mother experienced a mental health crisis and requested that the Department of Family and Children Services take care of her six-month old child, L. B. At an adjudicatory hearing, the mother stipulated that the child was dependent due to her mental illness and domestic violence between her and the child's father, and the juvenile court awarded temporary custody to the department. A case plan to reunify the mother with the child was implemented, which included psychological evaluations, counseling, parenting education, anger management classes, and taking prescribed mental health medications. After more than three years of the mother failing to complete the case plan, the department filed a petition to terminate the parental rights of L. B.'s mother and father.

At the outset of the termination hearing, the child's father voluntarily surrendered his parental rights. Thereafter, evidence introduced at the hearing showed that the mother has been diagnosed with bipolar disorder, major depressive disorder, and borderline personality disorder, and that she has been hospitalized on numerous occasions due to her mental illnesses. Various witnesses testified about the mother's

violent and erratic behavior and how she had terminated her relationships with therapists and other service providers abruptly and without explanation. One mental health professional testified that the mother showed little improvement despite having received significant services and that any improvement would only be temporary. The mother was also cognitively impaired, with an initial IQ evaluation in the average range, but subsequent tests showing significant cognitive deterioration. Multiple witnesses testified that L. B. would not be safe in the mother's care since she had not made any significant improvement in the management of her mental health. The mother herself testified that she understood that she would have to manage her mental illness for the rest of her life.

Other evidence showed that L. B. has a healthy attachment to his foster family. He has thrived in their care and they would like to adopt him. The child's guardian ad litem further recommended that termination of parental rights was in the child's best interests.

After the three-day hearing, the juvenile court entered its order terminating the mother's parental rights, finding L. B. to be a dependent child due to the lack of proper parental care because of the mother's mental health conditions. The mother filed a motion for new trial, which the court denied. This appeal followed.

2. *Dependency likely to continue.*

"OCGA § 15-11-310 (a) provides that in considering the termination of parental rights, the court shall first determine whether one of [five] statutory grounds for termination . . . has been met." *In the Interest of C. S.*, supra at 136 (1) (citation and punctuation omitted). In the instant case, the juvenile court terminated the mother's parental rights

> under OCGA § 15-11-310 (a) (5), which provides that a ground for termination exists when[ a] child is a dependent child due to lack of proper parental care or control by his or her parent, reasonable efforts to remedy the circumstances have been unsuccessful or were not required, such cause of dependency is likely to continue or will not likely be remedied, and [returning the child to his or her parent] is likely to cause serious physical, mental, emotional, or moral harm to such child.

*In the Interest of L. P.*, 339 Ga. App. 651, 654 (794 SE2d 252) (2016).

Here, the mother concedes that there is clear and convincing evidence that L. B. is dependent due to the lack of proper parental care or control because of her overwhelming mental health needs. She claims, however, that there was insufficient evidence that the dependency is likely to continue because the department did not make reasonable efforts to address the mother's mental health diagnosis and her decreased mental capacity. The claims are without merit.

4

With regard to her mental health diagnosis, the mother contends that there is no evidence that she received dialectical behavioral therapy to treat her borderline personality disorder. However, the mother's therapist expressly testified that she utilized dialectical behavioral therapy with the mother. As the trial court found in denying the motion for new trial, "there was ample testimony presented at trial that [the mother's] primary therapist made the diagnosis of Borderline Personality Disorder, and that she made appropriate referrals and addressed this diagnosis in her direct interactions with [the mother's] treatment."

As for her decreased mental capacity, the mother argues that the department did not ensure that she understood what was required of her to regain custody of L. B. But as the trial court explained, the record shows that the mother actually "completed many of the steps in her case plan over a period of years, showing that she did, in fact, understand what was expected of her." Moreover, several of her service providers testified that she appeared to understand what was required of her under the case plan.

As noted above, on appeal from a termination order we do not weigh the evidence or resolve credibility issues. *In the Interest of C. S.*, supra. In this case, the trial court was authorized to resolve any conflicts in the evidence and, "[i]nasmuch as the [mother's] unresolved [mental health] issues were a primary cause of [L. B.'s]

5

dependency, the juvenile court did not err in concluding that the cause of the [child's] dependency was likely to continue[.]" *In the Interest of E.G.M.*, 341 Ga. App. 33, 50 (2) (b) (798 SE2d 639) (2017). See also *In the Interest of J.J.J.*, 289 Ga. App. 466, 469-70 (657 SE2d 588) (2008) (dependency likely to continue when appellant has medically verifiable deficiency of mental or emotional health and has failed to comply with reunification plan).

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur*.